JOSÉ GARCÍA DOMÍNGUEZ, Plaintiff and Appellant, v. GERÓNIMO RIVERA ET AL., Defendants and Appellees.

No. 4356. Argued April 25, 1928.—Decided July 23, 1929.

A. *Reyes Delgado* and *R. Agrait Aldea*, for appellant.   *Luis Mercader*, for appellees.

Mr. Justice Wolf delivered the opinion of the court.

After a trial in a suit of revendication the District Court of Arecibo rendered judgment in favor of the three defendants named above on the ground of extraordinary prescription.   In its opinion the court set forth some of the history of the holdings of the defendants and found that each of them had possessed his particular piece of land for more than thirty years.   It was an undisputed fact that each of the three defendants was in possession of his said land independently of the other two.   The reason why the defendants were joined was because the plaintiff maintained that the said defendants were in possession of an entire strip of land, which, according to him, formed the eastern portion of an entire piece of property described in the complaint.

On appeal the plaintiff very properly maintains that in a matter of prescription the burden of proof is strongly on a defendant.   The contention of the plaintiff is that each of the defendants was bound to identify the particular piece of land he held and that the proof failed to do this.

We were not without some difficulty in tracing the history of the individual holdings of the defendants.   Some of the evidence submitted by the defendants was not very explicit, yet there was no objection to it and it tends by itself, with-

out considering the evidence of the plaintiff, to support the findings of the court. While the proof of the defendants as to origins is perhaps not as clear as it might be, yet the whole evidence tends strongly to support the conclusion of the court.

The failure of the court to comment on the case of the plaintiff has left us a bit doubtful of another conclusion at which we have arrived. It is that the plaintiff did not make out a case. To our minds he failed to prove by anything like a preponderance of the evidence that the supposed easternmost boundary of the land described in the complaint ran as far east as he believed and as he tried to prove.

There is another matter that militates against the plaintiff. He joined all three defendants in the same suit. We apprehend he had a right to do this, but when it came to the proof, if not to the averments of the complaint, we have some idea it was the plaintiff who was bound to identify the separate holdings of each of the defendants. Attention is drawn to section 125 of the Code of Civil Procedure, as follows:

"In an action for the recovery of real property it must be described in the complaint with such certainty as to enable an officer upon execution to identify it."

If it was not necessary in the course of the trial for the plaintiff to identify the individual holdings of the defendants, then he has hardly the right to complain if likewise in a general manner the defendants offered proof tending to show somewhat indefinitely that whatever they had been holding, within the strip claimed by the plaintiff, had been so held by each of them for more than thirty years.

These are general considerations and we make them partially because the evidence of the defendants was directed almost of necessity to show two things, namely, supposing a prima facie case in the plaintiff, that his easternmost boundary did not in fact extend as far as he claimed, and otherwise to show that of the part now claimed by the plaintiff

the defendants had been in possession for more than thirty years.

On examining his deed obtained three years or so before this suit the plaintiff discovered that the description of his land called for 285 acres, whereas by measurement it only contained 278. A certain Manuel Colón turned over the property physically to the plaintiff. The latter asked for and obtained a judicial order for a definition of boundaries (*deslinde*).

The surveyor made his report. Therein he put the beginning of the easternmost boundary at the northern point claimed by the plaintiff. Everybody agreed upon the southern point of the said eastern boundary. It was a pile of stones. The northern beginning of the said eastern line was described by the witness to run from a *"piedra rajada"*. These two words may mean an irregular stone of some kind or may mean an irregular stony formation. It transpired that while the survey was being made the plaintiff or his witnesses insisted that this *"piedra rajada"* was on a hill, difficult of access. The defendants and their witnesses at the survey said that the *"piedra rajada"* was further to the west. At the trial it was shown that at the date of the survey no *"piedra rajada"* was to be found at the point indicated by the defendants. Nevertheless the whole evidence of the defendants tended to show that it once had been there and that it or the evidence of it had been destroyed by an earthquake.

Now when the evidence of the plaintiff is examined, although he lays great stress on his title deeds and his survey, there is no definite location of this *"piedra rajada"* by the testimony of any witness. From the testimony of the surveyor Paz, who originally made a survey for the plaintiff, it would appear that one of the persons who helped locate the *"piedra rajada"* was Manuel Colón. Manuel Colón was a witness at the trial. Notably he failed in his direct court examination to locate the beginning of the eastern boundary. He was very indefinite as to boundaries, but insisted that he

knew the points. If he had been shown a plan or had been asked more particularly he might have thrown some light and the defendants would have had an opportunity to cross-examine him. The plaintiff in his own testimony said that from the points given him by Colón the land was lacking in acreage. Naturally the testimony of the plaintiff or his son cast very little light, as all their knowledge, if any, was acquired recently.

Thus we do not find in the record any satisfactory location of the eastern boundary. The surveyor did not show the sources of his knowledge other than by saying that he followed the plan turned over to him, presumably the *ex parte* plan made by Paz. What the surveyor Lacomba knew in any event was hearsay. A *"piedra rajada"* if not very large is readily destroyed, but in any event the plaintiff did not show this point by a clear preponderance of the evidence. The only indirect reference back to Manuel Colón was insufficient. Titles should not be annulled on such a slender showing, especially when there is positive evidence to the contrary. We feel bound to hold that the plaintiff did not make out a case.

It is possible that the court, in a way not clear to us, believed that the plaintiff had made out a prima facie case and that the land in the possession of the defendants had once belonged to the predecessors in title of the plaintiff. Then we think extraordinary prescription lay.

Naturally, if the defendants were occupying the land by a mistake and only intended to be without the boundaries claimed by the plaintiff, there is no adverse or hostile holding. The whole evidence shows a hostile holding by the defendants. They built houses and tilled the soil and maintained that the westernmost boundary of each of their properties ran up to the line traced from a *"piedra rajada"*, other than that claimed by plaintiff. It was not shown that they intended only to enter into lands that lay to the east of the line as now claimed by the plaintiff.

In this case, as we have indicated before, the plaintiff claimed a certain strip of land. He did not show the particular strip occupied by each of the defendants. The defendants say in effect that whatever land they do possess they and their predecessors have held for more than thirty years.

If the land possessed by each of the defendants was carved out of larger pieces owned and possessed by other persons or directly sold to defendants by similar persons prescription would not run. What the appellant maintains is that the particular portion claimed by plaintiff and possessed by each of the defendants and to which each of them acknowledges or asserts possession was never identified. We are agreed that there is no statement in the record other than the testimony of the defendants themselves that directly shows that the pieces of land held by the defendants ever belonged to their alleged predecessors in title, the Ortizes, the Fougerats, the Ruiz Zedas and others.

On the other hand, each of the defendants was allowed to say without objection that the portion that he held proceeded from segregations or a sale made to him by other persons. Although these statements were subject to analysis and destruction on cross-examination, no such cross-examination was made. "Why do you say that the portion you possess and that plaintiff claims is part of the land transferred to you by Ortiz?" is the kind of question that was not asked, for example, of Basilio Candelaria. Yet this defendant said that he had so derived his title and possession. Given the identification so made by each of the defendants, the court was fully justified from the rest of the evidence in concluding that the defendants had proved extraordinary prescription.

There is more. The appellant in his supplemental statement draws special attention to the testimony of Colón and Serrano as tending to show that the lands of the defendants had belonged to the predecessors in title of the plaintiff. Each of these witnesses, aged respectively 70 and 86, speaks of a time dating back about forty years. There was some cir-

cumstantial evidence tending to show that there had been no recent possession by plaintiff's predecessors. Other circumstantial evidence of the plaintiff showed that houses, it may be said adverse to the plaintiff, had stood on the land claimed for a very long time. The whole evidence, direct and circumstantial, tends to show that the land was held adversely to the plaintiff for more than thirty years.

The appellant also assigns error because the court admitted certain documents. The alleged error is in reality not well assigned. When it is alleged that various documents are admitted erroneously, if the objections to them vary, the admission of each document should be separately assigned as error. The assignment of error, besides, should contain a sort of summary of the objection made at the trial to the admission of the document. A whole case may be reversed on an erroneous admission and the appellate court is entitled to know by the mere assignment if such a possibility exists. Also it sometimes may be seen at a glance that the admission of the document was harmless. We shall nevertheless give some consideration to the assignment.

The court admitted a document, a possessory judgment, wherein Basilio Candelaria was successful in showing his possession of 25 acres. He said that the six acres claimed by plaintiff were included in these said 25 acres. Our affirmance of the judgment in this case rests on two grounds. With respect to the failure of the plaintiff to make out a case, the admission of the document plainly bore no relation. It was, however, some evidence tending to show the continuous possession of the said defendant. It is true, as appellant maintains, that no possessory judgment should be recorded if a previous title is to be found in the registry of property. However, there was nothing in the registry to show the exact eastern boundary of plaintiff's land. We find no objection to the admission of the document by reason of any rule or regulation of the Mortgage Law.

The other documents admitted may be similarly justified

or their admission was harmless. Once the defendants were allowed to state the origin of their respective holdings, as being contained in a larger acreage, anything with respect to these larger properties was, we think, admissible. The theory of the plaintiff was principally the failure of identification to which we have referred several times.

We are satisfied that there was no fundamental error in admitting document No. 7 or its admission was harmless. The appellant refers to his objections made to it at the trial, but he does not refer us to the pages of the record on which his objections were stated, which in itself is a reason for not discussing the alleged error more extensively. The judges of an appellate court, when they read a record, are under no obligation of taking notes or of re-reading it many times, but the pages of the record on which objections are made should be plainly indicated in the brief. The reference in the brief was only to the page where the document itself was to be found, but not to the objections made.

The judgment appealed from should be affirmed.